Good morning, Your Honor. May it please the Court, Ian Silverberg on behalf of the petitioners, the Aboud family. This case sort of presents the other side of what we were just talking about. This case came to me after the Board of Immigration Appeals had remanded it back to the Immigration Court. And after the Immigration Court then complied with the mandate from the Board of Immigration Appeals, that then came to me. So unlike the Pinto case where the petition for review was filed within 30 days of the BIA decision, the petition for review in this case was not filed until after the immigration judge complied with the Board of Immigration Appeals. The reason I think this case is a little bit different than Castro and Garcia is because, and I'm citing specifically at the Board's order which can be found at the Administrative Record on Appeal, page 654, where the Board of Immigration Appeals actually remanded so that the judge could enter a final order of deportation to Israel. That was the language that was used. So it wasn't merely to do a voluntary departure order. There appeared to be no final order until Judge Gasley, the immigration judge, actually entered that order on May 19, 2009, and that's when this petition for review was filed. So I agree with the government's position in this case that this is timely, but for different reasons. I don't necessarily believe that this case would require this panel or the Ninth Circuit to overturn or modify Castro and Garcia. I may personally have issues with that case because it does seem to create piecemeal litigation. Upon remand for voluntary departure, as we heard in the previous case, there are any other number of issues that could then be raised in front of the immigration judge. So we'd have that bizarre situation where the petition for review might be, the court might be considering our asylum case, which I hope to get to talk about as well, but I understand the court has this very important jurisdictional issue. So they could have that situation where this court is addressing political asylum, and on remand maybe something else comes up that raises a convention against torture issue or something more extreme or, as in the previous case, a cancellation of removal issue. Was the 10-2507 a final order? No, Your Honor, I don't believe it was, and that's why I started that way and that's why I think this case is different from the Castro and Garcia case, because the BIA specifically remanded it, and I've cited that, page 654 of the administrative record. Right, for issuance of an order of removal to Israel. Right. And that's why I think that is why this case is factually different, and that it is properly before the court and is not late. It's not an untimely petition for review. Well, that point's lost on me. Why isn't that, with the specific language that you just cited, why isn't that a final order that should have been appealed for? No, that was the one. The May 19 order was the order that finally ordered removal, and it was the previous order of the BIA said, Judge Gasly, immigration judge, you, sir, need to issue the order of removal. The BIA specifically ordered the immigration court to do that. Well, that was 310 of 09. March of 09 is when they denied cert, denied the certification certificate. Right. And then said, set a date for voluntary departure. Actually, what they said, Your Honor, and I'll look at that page again, it's 654, the DHS appeal is sustained, the grant of asylum is reversed, and the record is remanded to the immigration court for the issuance of an order of removal. So the BIA didn't issue the order of removal. What's the date of that language? That language, Your Honor, that is the 07 order. So then there was the certificate. Point. Right. So then Judge Gasly, the immigration court, he's there. He does the voluntary departure, and they try this certification, and I wasn't involved or familiar with the certification process. They then try the certification process saying the BIA needs to issue the final order of removal, and the BIA says, no, we're denying cert, and we're sending it to you again, Judge Gasly. And if you look at Judge Gasly's order of May 19th, 09, there is only one thing checked, ordered removed to Israel. There was no consideration of voluntary departure. So the only thing that we had in this case indicating that there was finally a final order of removal is the May 19th, 09 order. I hope that answers Your Honor's question. Thank you. So in that regard, Your Honor, I think this is factually different than Castro-Jones-Garcia. I would like to see the court revisit Castro-Jones-Garcia, and I certainly appreciate the government's argument in that regard as well, because it prevents, it would prevent this piecemeal litigation. And much like the previous case, the abuse, the petitioners here, they were never granted the opportunity, I would say, to either accept or reject or continue with their request for voluntary departure in light of the new regulations. This case fell, part of it fell before the new regulations, and part of it fell after the new regulations. So, again, we believe that jurisdiction is proper before the court, as to the substance of the claim that the court would allow. If your clients had filed a notice of appeal from the March BIA order, at that point they wouldn't have known whether they were entitled to voluntary departure or not. Not only that, that's correct, Your Honor, and they wouldn't have had anything that said this is a final order of removal. And if they had done that, well, aside from that problem, but assuming that under Castro-Jones that the March order was final, they wouldn't have known whether they were even giving up anything by filing the petition for review. That's absolutely correct, and I think that's a problem. The only way they could figure out whether there was the trade that the court described, the Supreme Court described in DADA, was to wait until they could see whether they were eligible for voluntary departure. That's correct, and I can tell you, as somebody who practices in front of Judge Gasley very often, he's very thorough about giving these warnings that he's required to give, and he wasn't required to give that at any time when he considered the voluntary departure. So this family was never on notice that by filing a petition for review they could lose their right for voluntary departure altogether. Is the position that there had never been, the IJ never used the words voluntary departure or 60-day voluntary departure is granted prior to May 19th? No, that's not, no, Your Honor, because he did. Well, he did in November of 07. Right, but he never said this is a final order. Apparently he didn't believe he could enter the final order. All the parties, government counsel and the petitioner's counsel at the time and Judge Gasley all participated in this attempt to certify it back to the BIA for issuance of the final order. So the point there is, though, that in November of 07 he did in fact grant them voluntary departure. I agree. I can't argue with that, Your Honor. That is, that's right there in the record. And I wouldn't argue with that. But what is not there is a final order of removal. And what we have subsequent to that is the Board of Immigration Appeals saying, you, Judge Gasley, immigration judge, must enter the final order of removal. And then all the parties at the immigration court level saying, well, wait a minute, let's certify it up so the BIA can issue the order of removal. In any event, I would certainly hope that the petitioners in this case, it's such a bizarre fact pattern procedurally that they wouldn't be prejudiced by that as we try to figure out the right thing to do here. I would certainly hope that we could get a hearing on the merits of the asylum claim. I think it was completely. Why don't you address the merits? Thank you, Your Honor. The immigration court in this matter did a very thorough order on what he was relying on. Now, I disagree with the Honorable Judge Gasley on his conclusion that there was no past persecution. I believe that the credible testimony of all of the, of each family member that testified, the citations to the country reports of the plight of Christian Arabs in Israel who are persecuted by their Muslim brothers, and the Israeli government is in a position where they're damned if they do damned if they don't do anything. And I think that's probably common knowledge, but we don't have to look at common knowledge. We can look at the record that was presented. Judge Gasley cited to country reports, newspaper articles. He found the abuts to be credible, and we know in asylum jurisprudence, there often isn't a lot of documentation, and people don't often announce their intent to persecute somebody based on their religion or any other protected classification. So once there's that credibility determination, their stories are entitled to a great deal of deference. But we don't have to rely on that either, because there was a great deal of documentation provided in this case, and the Honorable Judge Gasley cited very specifically to, and I urge you to look at his order, the very specific parts of the record that he cited to the court, his conclusion that the abuts would face a well-founded fear of persecution should they be required to return. If you're correct on that, wouldn't we be announcing then that all Christian Arabs living in Nazareth would be entitled to asylum in the United States? There's no specific threat to this family. They've been singled out in ways that other Arab Christians living in Nazareth haven't been singled out. Well, Your Honor, I don't know that you have to go that broadly to find in their favor. Their persecution was based on their religion. It's based on the fact that as Christians, their Muslim neighbors do not accept them. They don't accept anybody that, you know, there's a group anyway. Certainly not all Muslims have that belief. But there is a very large population in Israel that do have that belief. It's a very tiny minority of Christian Arabs. And so I think you could find the persecution to them specifically as Christians without having to make that broad statement. What was the number of Christian Arabs living in Nazareth? I want to say it was under 10 percent. It was significantly under. And I apologize for not having that right here, Your Honor. I know it was part of the record, though. The class of Christians, I think you had Orthodox. The Orthodox Christians were 18,000 and other Christians about the same number that were Protestants. Do we know how many of those were Arab Christians? Are they all Arab Christians? My understanding is that they are, Your Honor, but I can't say that with any certainty. I see my time has run, and I thank the Court for the opportunity to argue on behalf of this family. No, I just want to assure counsel that when we focus at oral argument on particular issues, that does not mean we haven't read your briefs and the record. We do. We prepare these cases ahead of time. I have no doubt. So we appreciate your talk about the merits, but we have focused on that as well. Thank you, Your Honor. You're not waiving and giving up, and this is not the be-all and end-all of our preparation for this case. Thank you very much. Good morning. May it please the Court, my name is Luis Perez. I am here on behalf of the Attorney General. I would like to point out that the remand order in this case is the March 10, 2009, decision by the Board of Immigration Appeals and not the October 2007 decision. The March 10, 2009 decision is found on AR-7, and it says, Finally, while the immigration judge granted the respondent's application for voluntary departure, he did not set a time period within which the respondent must depart. Therefore, on remand, the immigration judge should enter a new order with respect to this issue. So this, in effect, was a remand for purposes of voluntary departure, to perfect the benefit of voluntary departure. So this case is very similar to Castrejon in that regard. The difference is that in Castrejon, by the time the case got to the Court, there had already been a grant of voluntary departure. And the Court in Castrejon, in 1995 decision, found there is no basis for the alien to have sought review of the grant of voluntary departure. And therefore, the Court found that the Board remand was essentially the final order of removal. Now, your Honor asks, what has changed since Castrejon? And we have Mike. Back up a minute. Sure. I appreciate your getting to that. So your view is the order of March 10, 2009 is the final order? No. It's not? It's not. So your position is that the final order under Castrejon would be May? No. It would be March under Castrejon. I'm sorry, Your Honor. I confused your question.  And the final order would be May. If they had filed a petition for review from March 10, that under Castrejon would have been a final order? Correct. Correct, Your Honor. Correct. Even though they were remanding back to the I.J. to perfect? Correct. Because in Castrejon, there was a remand for voluntary departure. When the case got to the Court, by the time the Court heard oral argument, the I.J. had granted voluntary departure already upon the remand. And what the Court found in Castrejon is it makes no sense for the alien in Castrejon to seek review of the grant of voluntary departure. So in Castrejon, the Court concluded for all intent and purposes, the remand order was the final order of removal. Okay? Now, in this case, the I.J. in the May 2009 decision issued an order of removal. The I.J., there's no mention of voluntary departure. And I don't know why. However, I would point to the Court's regulation at 1240.26d, which says that after January 20, 2009, every order that goes to the grant of voluntary departure has to be accompanied by an order of removal. So you cannot do one without the other. Okay? Now, Judge Fischer asked the question, what has changed since Castrejon? And notwithstanding the regulation and notwithstanding DADA, the other thing that has changed since Castrejon is the Court's decision in Fernandez, which pretty much defines what is the scope of remand. And what the Court says in Fernandez is that when there is a remand for a specific purpose, it could be voluntary departure, it could be cancellation of removal, it could be asylum. The point is that unless the Board keeps jurisdiction of the case, the immigration judge can consider any other issues and is not limited by the specific purpose of the remand. So you would think that in Fernandez where they actually remanded for what appears to be a substantive ruling by the judge and then he extended that, or she, as the case may be, that's the equivalent of a remand for voluntary departure under Castrejon? Correct. Because what happened in Fernandez was Fernandez pretty much gave deference to a Board decision called matter of MD. And matter of MD has to do with background checks. For example, when an alien is granted asylum or withholding of removal, the regulation says that the alien has to comply with background checks, meaning that the person is not a threat to the security of the United States or public safety. So that remand for background checks is not really a remand as to whether or not the alien is eligible for the benefit, but it's pretty much a confirmation that to the extent that he's not, it's more ministerial in a way. Can I talk about Fernandez? Yes. Fernandez, you'll have to help me here, because I thought Fernandez was remanded to allow the DSHS to rebut the presumption of future persecution. Yes. Yes, Your Honor, you're correct. What I'm saying is that Fernandez in his discussion pretty much was referencing to a case called matter of MD and sort of to put a little bit of context in what is the basis for our argument is that matter of MD, which is a board decision, okay, was a remand for background check, which is kind of ministerial. And what the board said in matter of MD was that when they remand for background checks, that doesn't prevent the immigration judge from considering any other issues, could be a new application for cancellation of removal. All that the alien needs to do is establish prima facie eligibility for relief, okay? It's not reopening of proceedings. The proceedings are continuing, going on. So the whole point of the Fernandez decision is that it changes the scope of review. I mean, it clarifies it. It clarifies the scope of review, because it allows aliens to raise other issues, okay? So in the remand in this case, what are you suggesting was available? You're still trying to sort out. Yes. The March order. Correct. You would construe under Castrian as being a final order. Correct. Okay. But under Fernandez, you would construe it not being a final order. Correct. And that because the scope of the remand, as dictated, expressed by the BIA, was unlimited. Well, the scope of remand was for a specific purpose. It was. Yes. But the purpose was broader than voluntary departure. Correct. In light of matter of MD, which is board precedent that precedes this board decision, and in light of Fernandez, which obviously postdates this decision, but the board has to follow matter of MD. So when the board remands for a specific purpose, it is understood, according to matter of MD, that the alien can raise any other issues, and it's not limited by the purpose of the remand. Of course, the alien would have to establish prima facie eligibility for relief before the immigration judge to go forward with that benefit. But the point is that the proceedings have not been completed, that there is no executable final order of removal, because DHS cannot remove the person until all proceedings are completed. Counsel, did I understand you to say that the new regulations require that a final order have included some decision on voluntary departure? No. What I meant to say, Your Honor, is that to the extent that the question of voluntary departure is before the IJ or the board, if the IJ were to grant voluntary departure, the regulation mandates the IJ to also issue an alternative order of removal. So if you don't depart within the 60 days, then you're ordered to move? Correct. Yes. And that's just to make the order actionable. So if the alien doesn't remove, the DHS can execute the order of removal. DHS doesn't have to go back to the immigration judge to ask for an order of removal. So just so I understand how you're construing all of this, even though this remand was for a specific purpose in this case, the board did not expressly retain jurisdiction? Correct. And qualify or limit the scope of remand to a specific purpose? So, in other words, to come within Fernanda's portion I've just read, therefore on remand the immigration should enter a new order with respect to the time period and shall entertain no other motions and we retain jurisdiction. Correct. That's what it would take to become, under your current view, of how Castrillon would have to be interpreted as the final. Then it would come under Fernanda's Castrillon as a final order. Otherwise, if the board remands for consideration of voluntary departure, as we have in the other case, that's all the board says. That is not a final order because under Fernanda's your reading is it's not limited to just voluntary departure, even though that was the specific scope on the face of the matter. Correct. And not only under Fernanda's, also under matter of MD, which is the precedent that the immigration judge also has to follow nationwide. My time is up. I can address the one portion of the asylum case if I can, if not I'll sit down, sir. Well, you can give us a minute on that. Counsel, the Petitioner, talked about the merits. Sure. Thank you, Your Honor. Just one question. Responding to Judge Bybee's question, for the court to find a law found a fear of future persecution in this case, it would have to conclude that there is a pattern or practice of persecution from all Muslims against Christians in Israel. And the evidence in the record, particularly the statement prepared by the U.S. Conference of Catholic Bishops, says that there was harassment, but that that harassment was from gang members and extremists. It was not from all Muslims. And as a matter of fact, the Palestinian Authority pretty much condemned those actions, according to the same statement by the U.S. Conference of Catholic Bishops. So the evidence in the record doesn't compel the conclusion that all Muslims want to expel Christians from Israel. That's just one response to Judge Bybee's question.  Thank you. Thank you, sir. Counsel, I'll give you a minute if you have something you need to say. No, Your Honor. Unless the court has any specific questions, I have to submit. Okay. Thank you. Thank you. Counsel, thank you for your argument. All right. Both Pinto and Abood are submitted. And we will move then to Garfious Rodriguez v. Holder.
judges: Shea, Fisher, Bybee